IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**MISTIE BEAN**                                                                      **PLAINTIFF**

vs.                                        No. 4:20-cv-798-LPR

**WAYNE FARMS, LLC**                                                       **DEFENDANT**

<u>**DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**</u>

Defendant, Wayne Farms, LLC, ("Defendant"), by and through its attorneys, FRIDAY, ELDREDGE & CLARK, LLP, submit the following Brief in Support of its Motion for Summary Judgment.

## I.      INTRODUCTION

Plaintiff, Mistie Bean, filed suit against Wayne Farms, LLC, alleging that she was not properly compensated or paid overtime for time worked off-the-clock. Defendant moves for summary judgment. Specifically, Defendant properly classified Plaintiff as a salaried, non-exempt employee, required her to keep detailed time records via the company's computerized timekeeping system and paid her time and a half her regular rate for all hours worked in excess of 40 in a workweek according to those records. Plaintiffs' unsupported claim that she worked off-the-clock and her vague and conclusory testimony regarding the nature and amount of off-the-clock work are insufficient as a matter of law to carry her burden of proof that she worked off the clock at all, much less the amount of hours worked or damages for that alleged work. Thus, Defendant is entitled to judgment as a matter of law.

## II.      FACTUAL BACKGROUND

Wayne Farms is a poultry production and processing company. Compl. ¶16. Wayne Farms' Arkansas facility is in Danville, Arkansas. *Id*. ¶18. Wayne Farms employed Plaintiff at its Danville facility as a Safety and Health Technician from January 2, 2014 to June 17, 2020. *See* Resignation/Termination Request of Mistie Bean Memorandum attached to Motion as **Exhibit G**, at DF 191-211.  Plaintiff is a certified Emergency Medical Technician and her main job duty was to respond to any employee injuries during production. *See* Declaration  of Anita VanRavensway, attached to Motion as **Exhibit J**, ¶5. She was classified as salaried, nonexempt. That means she was paid a set salary for hours up to 40 and time and a half per hour for hours worked over 40. Thus, there is no dispute here over whether half-time overtime is appropriate.

Plaintiff typically worked the second shift which had a start time of 4pm and a stop time that would fluctuate between midnight and the very early morning depending on when the production line ran out of poultry to process.  *See* Deposition of Mistie Bean, attached to Motion as **Exhibit A**, 29:8-30:4. Plaintiff's duties mainly involved first aid related-tasks such a checking blood pressures, bandaging wounds, maintaining first aid supplies, personal protective equipment checks, and recording any medical injuries. *Id.* at 31:1-32:10.

Plaintiff began this role when re-hired on January 2, 2014. *See* **Ex. G** at DF 191.  Plaintiff resigned on June 17, 2020, after a series of days of failing to appear at work and subsequent communication from her stating she was resigning. *Id.* at DF 193. Plaintiff already had a well-documented issue with attendance; she underwent a performance improvement plant and received multiple warnings. *Id.* at DF 198-211. The latest string of absences occurred after Plaintiff requested vacation, which was approved, and then asked for two additional days, which were denied. *Id.* at DF 191. Despite denial of these two extra days, Plaintiff missed work claiming to be

sick and took off on her vacation. *Id*. Plaintiff's poor communication with Defendant only increased once she returned from her vacation, and she ultimately resigned on June 17, 2020. *Id.*at DF 191-194.  Thus, the period at issue in this suit is from June 30, 2017- June 17, 2020.

During Plaintiff's deposition, she claimed she worked off-the-clock, therefore accruing overtime hours not found on her timesheets. *See* **Ex. A**, 5:18-23. She failed, however, to present sufficient evidence that this occurred, or if it did occur, that her hours were not corrected to reflect actual time worked.   *Id.* at 52:3-9. Plaintiff was repeatedly given the opportunity to specify instances where she worked off-the-clock or informed Defendant about working off-the-clock and was not paid for all hours worked.  Plaintiff simply said that her paycheck never seemed to go up, no matter how much she worked. *Id.* at 34:9-16 & 63:1-11.  This allegation is refuted by even the most cursory review of her pay records, however.  For example, Plaintiff's first pay record shows she worked 80 hours and 30.56 overtime hours over the course of two weeks from June 25, 2017 to July 8, 2017, for a total amount paid of $2,185.26. *See* Mistie Bean's Payroll attached to Motion as **Ex. C**, at DF 28.  By comparison, Plaintiff worked 80 hours and 1.73 overtime hours from September 17, 2017 to September 30, 2017, for a total amount paid of $1,433.94.  *Id.* at DF 34. As a final example, Plaintiff worked 80 hours and 13.47 overtime hours from November 26, 2017 to December 9, 2017, for a total amount paid of $1,739.88. *Id.* at DF 40. Plaintiff's pay records demonstrate that she was paid for working overtime and her pay fluctuated based on how much she worked.

During her tenure, she worked varying hours, from a high of 110.56 hours to a low of 36.25 hours over two weeks. *Compare* **Ex. C**, at DF 28 to **Ex. C**, at DF 46.   While her pay did not vary for any week she worked 40 hours or less, when she worked overtime, she was paid 1.5 times her

regular rate and her pay varied accordingly.[1] *See,* for example, **Ex. C**, at DF 28, 34, 40, 41, 51, 53. From January 1, 2018 to September 30, 2019, the time records show that Plaintiff worked an average of 41.49 hours per week. *Id.*at DF 42-86. Plaintiff was properly paid for all recorded work, overtime or otherwise. *See* **Ex. C**, at DF 28-86 and Mistie Bean's Time Detail attached to Motion as **Ex. E,** at 281-325.

As discussed more fully below, Plaintiff's testimony relied on generalities and vagueness as to hours allegedly worked off-the-clock. Defendant is entitled to summary judgement as Plaintiff's vague allegations are insufficient as a matter of law.

## III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant has established the absence of a genuine dispute of material fact and demonstrated its entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87; *Nat'l. Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999). To defeat a motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.* at 586. The non-moving party may not rest on mere allegations or denials of his pleading, but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e). The mere existence of some alleged factual dispute will not defeat a properly supported motion for summary judgment; the disputed fact must be "outcome determinative." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).

---

[1] There is a reference to "Straight Overtime" in Plaintiff's pay records. This concept captures when a salaried, nonexempt employee does not actually work 40 hours in a workweek due to taking time off, and so straight overtime are the hours the employee worked to reach the 40-hour threshold to invoke overtime. It does not indicate that Plaintiff was paid her regular rate for hours worked in excess of 40.

## IV.    DISCUSSION AND AUTHORITY

### a.  Plaintiff's Vague and Unsupported Estimates of Alleged Overtime Work Are Insufficient as a Matter of Law

Plaintiff alleges Defendant owes her overtime pay for alleged work performed off-the-clock. Despite not being able to point to any specific instance where she worked and was not paid, and despite admitting that she did not know whether any off the clock work actually took her above 40 hours in a week (*see* **Ex. A**, 104:10-16), Plaintiff produced a damages calculation after her deposition that assumes she worked five hours off-the-clock every week in the statutory period. *See* Damages Calculation attached to Motion as **Ex. I.**   At the outset, Plaintiff does not claim Defendant's timekeeping system or the policies and procedures surrounding it were inadequate, or that she was not properly trained as to these systems. Thus, there is no genuine issue of material fact as to the adequacy of the timekeeping system and the corresponding policies.  As addressed in detail below, Plaintiff consistently alleges that she worked hours that were off-the-clock; however, she could not identify specific dates or times when this occurred and instead relied on how she felt rather than facts. Plaintiff is not entitled to recover overtime pay unless she can demonstrate: 1) the amount and extent of any alleged work performed off the clock; and 2) that the total time worked in a given week exceeded 40 hours.

"An employee who sues for unpaid overtime 'has the burden of proving that he performed work for which he was not properly compensated.'" *Holaway v. Stratasys, Inc.*, 771 F.3d 1057, 1059 (8th Cir. 2014) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946)). If an employer fails to keep accurate records, "employees are to be awarded compensation based on the most accurate basis possible." *Dole v. Tony & Susan Alamo Found.*, 915 F.2d 349, 351 (8th Cir. 1990). While this is a "relaxed standard of proof," an employee must still come forward with "'sufficient evidence to show the amount and extent of [overtime] work' which would allow a

fact-finder to find overtime hours 'as a matter of just and reasonable inference.'" *Holaway*, 771 F.3d at 1059-60 (quoting *Anderson*, 328 U.S. at 687-88).

Contradictory and bare assertions of hours worked untethered from any evidence are insufficient even under a relaxed standard. *See Holaway*, 771 F.3d at 1060; *see also, e.g., Carmody v. Kansas City Bd. of Police Com'rs*, 713 F.3d 401, 407 (8th Cir. 2013) ("The city's failure to provide accurate time records reduces the officers' burden, but does not eliminate it."). Stated another way, "assertions alone" cannot adequately support a finding that an employee worked unpaid time in any given week. *See Meinke v. Southern Paramedic Servs., Inc.*, 2017 WL 157737 at *1 (E.D. Ark., Jan. 10, 2017). In *Holaway*, the plaintiff provided varying estimates of the average hours worked each week ranging from 45 to 70 hours, but failed to support those estimates with evidence. 771 F.3d at 1059-60. The employee also failed to compare alleged hours worked versus the employer's business records or to take into account paid holidays, vacation days, or days he did not perform services. *Id*. at 1060. Instead, he only testified regarding ranges of time he typically spent on various tasks. *Id*. at 1058. Based on these assertions, the Eighth Circuit held that the plaintiff failed to provide a meaningful explanation of how he arrived at an average of 60 hours worked each week because he "provide[d] no details which would allow a jury to determine [the plaintiff] worked beyond forty hours in any specific week of his employment." *Id*. at 1060.

Consistent with *Holaway*, numerous courts have found that blanket estimates of alleged time worked in a week unsupported by evidence are not sufficient to meet even the relaxed burden of proof under *Anderson*. *See Carmody*, 713 F.3d at 407; *Ihegword v. Harris County Hosp. Dist.*, 555 Fed. Appx. 372, 375 (5th Cir. 2014); *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 690-91 (7th Cir. 2010); *Harvill v. Westward Commc'ns, LLC*, 433 F.3d 428, 441 (5th Cir. 2005); *Viet v. Le*, 951 F.3d 818, 824-25 (6th Cir. 2020); *Meinke*, 2017 WL 157737 at *1; *Rickard v. Hennepin Home*

*Health Care, Inc.*, 2016 WL 6089690 at *3 (D. Minn. Oct. 17, 2016); *Shaunpen Zhou v. Int'l Business Machines Corp.*, 2017 WL 1217195 at *21 (Mar. 31, 2017 N.D. Iowa).

In a recent case in the Eastern District of Arkansas, the employee provided a declaration stating when he was "generally scheduled for work" and when he arrived at work in the morning "the vast majority of the time." *Thompson v. DeMichele Enterprises, Inc.*, Case No.: 4:18-cv-00903-LPR (slip op.), 2020 WL 1285040 at *9 (E.D. Ark., Jan. 3, 2020). In reviewing this evidence, this Court found, "[Plaintiff] presented no facts—except for his own conclusory recollections—to show that the start times were incorrect on the particular days in question. That does not suffice to create a genuine dispute." *Id*.

In this case, Plaintiff has had access to Defendant's time records, her own phone records, text messages, and her Pure OHS logs for the relevant time period.[2] In written discovery, Defendant propounded an interrogatory asking, "Please give an account, itemized as fully and as carefully as you can, of all losses, expenses and damages you seek to recover in this lawsuit which you claim were incurred by you or on your behalf…" *See* Mistie Bean's Discovery Responses attached to Motion as **Exhibit B**, at Int. 9. Plaintiff answered, "Damages have not been fully calculated in this case yet… Plaintiff will provide detailed damages calculations after Plaintiff has had an opportunity to inspect relevant documents in Defendant's possession and the damages calculations have been prepared." *Id.* On May 28, 2021, long after her deposition had been taken, Plaintiff supplemented her initial disclosures and provided vague and unsupported estimates that she worked five hours of-the-clock during every week relevant to this action. *See* **Ex. I.** These

---

[2] As a safety and health technician, Plaintiff was required to log medical interactions with employees into Pure OHS logs. *See* **Ex. D**. These logs tracked the treating technician, the employee treated, the location, and the time it occurred. *See* **Ex. C**, at DF 339-362 and **Ex. A**, at 79:21-80:16.

estimates, unsupported by any evidence, are insufficient to meet Plaintiffs' burden even under a relaxed standard. *See Holaway*, 771 F.3d at 1059-60.

In her deposition, Plaintiff had the benefit of reviewing additional documents to aid in providing more details of alleged work off-the-clock. In the face of that evidence, Plaintiff clung to vague, unsupported estimates of work off-the-clock even while the evidence showed she was paid for all time worked. For example, while her Complaint alleged she "usually worked approximately two (2) to five (5) hours of off-the-clock hours per week" (doc. 1, at ¶ 33), Plaintiff could not muster more specific instances that corroborated that allegation much less provide instances for every week.  Instead she responded, "They're [the pay records] not correct, or I wouldn't be here." *See* **Ex. A**, at 50:12. When asked which pay records were not correct, Plaintiff deflected, "You have copies of all my paystubs, and I'm sure the time punches, and the text messages where it shows that I was working whenever I wasn't paid for it." *Id.*

Indeed, Defendant does have copies of the paystubs and other evidence. Those records reveal she was paid for every hour she recorded. *See* **Ex. C** at DF 28-86, and Mistie Bean's Punch Detail attached to Motion at **Ex. D** at 240-280.  For example, on September 29, 2019, she worked from 11 am to 3:20 pm, outside her regular hours and the pay records of the company show that she was paid for that time. *See* **Ex. D** at DF 271 and **Ex. D** at 315.   Other examples are discussed below.

Plaintiff alleges she would clock out for lunch, and then immediately be called back to work while clocked out. *See* **Ex. A** at 47:17-49:12. However, in this same exchange, she stated her supervisor would adjust her time to account for her work if she notified her by text or by phone call. *Id.*  Very often Plaintiff did not clock out for lunch. In fact, during the three year period prior

to her Complaint here, she did not clock out, and was thus paid for lunch 419 times. *See* **Ex. J**, ¶
16.

Her supervisor would also review her time records at the end of the week to determine if
any punches were missed in an effort to correct them *See* **Ex. A**, at 49:9-23. For example, Plaintiff
complained issues with her badge could prevent her from clocking in or out. *Id.* at 44:12-14.
Plaintiff admitted that if her badge failed to work, however, she would contact her supervisor to
clock her in or out. *Id.* She also admitted that if her badge didn't work, she could get a new one.
*Id.* at 85:1-7. Plaintiff's supervisor, Anita Vanravensway, did have to clock her out at the end of
the day often. *See* **Ex. J**, ¶ 11. Vanravensway would contact Plaintiff about missed punches. She
would enter what Plaintiff told her or if Plaintiff did not respond, she would enter a last punch to
the time when the production line ran out of chicken as there would be no more work for Plaintiff
as all production workers would be gone unless she was informed otherwise later. *See* **Ex. D**, ¶ 12.

Plaintiff was pressed as to when she worked off-the-clock, and she initially provided one
example where she spent two or three nights in Little Rock accompanying an employee to a
hospital in the three years in question. *Id.* at 55:1-57:23. When questioned if there were other times
where she worked outside her shift and did not get paid, Plaintiff responded, "I don't know how
many times." *Id.* at 57:4-11.  Further, when asked which workweek these two or three nights
occurred and with which employees Plaintiff stated, "I can't give names…or I—mean, it would
happen here and there, you know, throughout the whole time that I was the Health and Safety
Tech…and the employees, I can't think of their names off the top of my head…". *Id.* at 57:14-25.
Plaintiff offered she had accompanied an employee named Chris to the hospital in 2019 according
to her best guess. *Id.* at 58:9-23. A review of the unredacted Pure OHS logs reveals there was no
incident in 2019 that involved an employee with the first name of "Chris." *See* **Exhibit J**, ¶5.

Again, Plaintiff was questioned as to how her pay was incorrect and continued to rely on

how she felt and generalities:

> Q:      Okay. And those times where you told Anita, I left at this time, did you ever look
>         at your check and see if she recorded the time right?
> A:      I—not, not every single time. I just assumed that it was, she was taking care of it. I
>         mean, regardless, I knew that I had to have a job, and I had to be there to get a
>         paycheck. Did I feel like I was, it was right, no, but…
> Q:      What wasn't right?
> A:      My pay.
> Q:      And what wasn't right about it?
> A:      Because it never reflected the hours I worked.
> Q:      And in any given week can you point me to any given week where that's the case?
> A:      I'm—not specific, but – because there was—it was the whole time. If I worked a
>         Saturday, I couldn't tell the difference ever on my check. Now if I didn't, I could
>         tell that my check was even less than what it was, but that's it. That's the only
>         difference.

*Id.* at 62:18-63:14. Later, Plaintiff presented another example where she would be called

into work outside of her shift where she worked hours that were allegedly unpaid but could not

specify when:

> Q:      Okay. So any—do you remember any specific, anything specific that would allow
>         us to go back and look at the right records with respect to this going to Chambers
>         ER, either, either you know going mid shift and staying beyond midnight or one
>         o'clock, or being called back to accompany a third shift employee to Chambers?
>         Do you remember any specifics that would allow us to home in on that?
> A:      I don't—like specifics, like are you asking people?
> Q:      Yeah, the incident, the employees.
> A:      There were so many, it's hard to narrow that down. That happened very, very often.
>         Like I have been called back to the plant after leaving three times in one week.
> Q:      Okay. But is that every week, or is that—
> A:      Not every week, but a lot of them, yes.
> Q:      Not three times in a lot of them; is it?
> A:      No, not three times in a lot of them, but I mean, it happened frequently, is what I'm
>         saying.
> …
> Q:      Is there any specific instance—and, again, I mean, we can kind of—on the injuries,
>         on the coming back to take care of somebody, do you remember any names of any
>         employees you took care of outside of your normal work hours that you believe you
>         didn't get paid for?
> A:      Not off the top of my head, no.

> Q:      What would you need to look at to refresh your recollection to show that you were paid or not paid for work you did outside your regular working hours?
> A:      There were so many times, and it was so frequent it would be hard to narrow it down or refresh my memory. It happened a lot.

*Id.* at 67:15-72:23. Defendant continually invited Plaintiff throughout her deposition to specify days or weeks where she worked outside of her regular hours, and those questions were consistently met with vague, conclusory recollections that failed to create a genuine dispute.

> Q:      How often were you called back just to be, just to find out that it was taken care of in the three years prior to June of 2020?
> A:      I can't give an exact number.
> Q:      Can you give me a ballpark number?
> A:      I don't – it was frequent. That's all I know. I was called back a lot. I know one time in particular was three times in one week.
> A:      What week was that?
> Q:      I don't know.

*Id.* at 74:15-24.

> Q:      Okay. So here's my question, then. Tell me when Anita punched you out for lunch for some period of time and that's not accurate?
> A:      I can't say what time specific. I mean, she punched me in and out for lunch a lot, so I don't know.

*Id.* at 83:19-24. Plaintiff had other similar exchanges with Defense counsel regarding her alleged incorrect pay, her lack of particularity or evidence regarding it, even her own lack of diligence in uncovering pay allegedly owed to her. *Id.* at 118:2-120:14, 131:9-132:12, 139:13-140:21, 142:16-145:13, 146:7-147:7. In all of these exchanges, Plaintiff failed to bring forth any particular examples that bolster her own claims, either from her own recollection or from the evidence at her disposal, continually relying on generalized claims and so fails to satisfy even the relaxed burden under *Anderson* of proving that she performed work that went uncompensated.

     **b.  Plaintiff was paid for all work outside of her regular hours, even when she stayed overnight in the emergency room.  Compl. ¶32.**

    In response to Int. 10 and RFP 10, Plaintiff produced some pictures and documents that allegedly supported her claim of working off-the-clock. *See* **Ex. L**. Plaintiff was questioned about one picture in particular that showed a man in a hospital room with Plaintiff accompanying him outside of her regular hours. *See* **Ex. L**, at Bean 15. This picture was time-stamped March 14, 3:28 a.m. *Id.* Plaintiff could not remember if she had cross-referenced this timestamped picture with her time records.  *See* **Ex. A**, at 159:19-22. When presented with evidence from her time records that showed she was paid, Plaintiff could not say it was inaccurate:

> Q:  If you look at the big sheets in front of you, the Time Detail, and you go to page 321. Go to Defendant 321
>
> A:  Uh-huh.
>
> Q:  And then on---it shows 3-14, it shows totaled amount eight hours and 18 minutes, and additional 30 minutes. Do you see that, on Defendant's 321 for March 14th, 2020?
>
> A:  I mean, see, obviously that is not right. Obviously, this is incorrect.
>
> Q:  You were paid for eight hours and 48 minutes for Saturday March 14th. Why is that not correct.
>
> A:  I don't know. I don't know if its correct or—I mean, I don't know.
>
> …
>
> Q:  Okay. So here's what I'm telling you; right? I'm telling you the company's records show that you were clocked in at 2:12 a.m., clocked out at 10:30 a.m., for a total of eight hours and 48 minutes, or is that 18 minutes? I'm sorry. But that's the time showed, roughly from 2:00 in the morning until 10:30 in the morning.
>
> A:  Uh-huh.
>
> Q:  As we sit here today, can you tell me that you worked longer than that, or not?
>
> A:  I may have. If I go back and look through my phone records and the rest of the stuff, I may have. I'm not saying either way. **I don't know.**

*Id.* at 162:23-165:21 (emphasis added). Plaintiff was presented with more timestamped pictures she produced in support of her claims of working outside her regular hours, off-the-clock, and was asked whether she had cross-referenced it with her time records. Again, she could not recall. *Id.* at 167:16-168:18.  Plaintiff was indeed punched in and paid for this time. *See* **Ex. D**, at

DF 277 and **Ex. E**, at 321. This happened at least two more times. *See* **Ex. A**. at 172:3-12, 175:8-17.  Again, Plaintiff was punched in and paid. *See* **Ex. D**, at DF 270, 279 and **Ex. E**, at 314, 322.

During this litigation, Plaintiff has had access to her pay records, time detail, work schedule, and her Pure OHS logs, but has failed to present sufficient evidence upon which to satisfy even a relaxed burden under *Anderson* of proving that she performed work that went uncompensated. These examples demonstrate Plaintiff cannot prove that she worked off the clock, much less that the off the clock work resulted in unpaid overtime. Even assuming the relaxed standard could apply, she has not offered sufficient evidence to establish the fact of or amount of overtime damages as a matter of "just and reasonable inference." Like in *Holaway*, Plaintiff made no efforts to compare her estimates of five hours worked off-the-clock per week to the time records maintained by Defendant or any records or other evidence she may have to show uncompensated work outside her normal work hours. When faced with more precise evidence, Plaintiff fell back on vague, conclusory allegations.  This Court should rule as a matter of law that Plaintiff has failed to establish they worked off-the-clock and accrued any overtime as a result of it.  Plaintiffs bear the burden of proving any overtime on the "most accurate basis possible." *Dole*, 915 F.2d at 351.

### V.    CONCLUSION

For the reasons set forth herein, Defendant respectfully request that the Court grant it judgment as a matter of law on the issues set forth above.

Dated: June 28, 2021                    Respectfully submitted,

                                        Daniel L. Herrington (ABA# 95166)
                                        Julio R Olaya Jr. (ABA#2020152)
                                        Friday, Eldredge & Clark, LLP
                                        2000 Regions Center
                                        400 West Capitol Avenue
                                        Little Rock, AR  72201-3493
                                        501-370-1571
                                        501-244-5382 Fax
                                        herrington@fridayfirm.com
                                        jolaya@fridayfirm.com


                        By:    _/s/ Daniel L. Herrington_____
                                Daniel L. Herrington