IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**MISTIE BEAN**                                                                                          **PLAINTIFF**

v.                                     Case No.: 4:20-cv-798-LPR

**WAYNE FARMS LLC**                                                                             **DEFENDANT**

### ORDER

Plaintiff Mistie Bean sued her former employer, Defendant Wayne Farms LLC ("Wayne Farms"), for alleged violations of the Fair Labor Standards Act ("FLSA") and the Arkansas Minimum Wage Act ("AMWA"). Ms. Bean alleges that Defendant failed to pay her overtime wages. Defendant moved for summary judgment.[1] For the reasons discussed below, that Motion is GRANTED in its entirety.

### I. BACKGROUND[2]

Wayne Farms is a poultry production and processing company.[3] Beginning on January 2, 2014, Wayne Farms employed Ms. Bean at its facility located in Danville, Arkansas.[4] Ms. Bean worked as a Safety and Health Technician.[5] In this role, she provided first aid and some emergency

---

[1] Def.'s Mot. for Summ. J. (Doc. 16).

[2] On summary judgment, the Court recites the genuinely disputed facts in a light most favorable to the plaintiff, including giving the plaintiff all reasonable inferences from the facts. *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016). Of course, the Court also relies on any undisputed facts. Essentially, the Court considers the most pro-plaintiff version of the record that a rational juror could conclude occurred. Accordingly, the Court's factual recitation is only good for the summary judgment motion.

[3] Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts (Doc. 21) ¶ 1.

[4] *Id.* ¶¶ 2–3. Ms. Bean worked at Wayne Farms prior to 2014. Ex. A to Def.'s Mot. for Summ. J. (Doc. 16-1) at 23. In 2002, she was hired to work on the production line at Wayne Farms, which she did for approximately 20 months. *Id.* at 23–25. Wayne Farms rehired Ms. Bean in 2004, but she left during orientation after accepting an offer for another job with higher pay. *Id.* 25–26.

[5] Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts (Doc. 21) ¶ 3.

response.[6]  Her duties included checking employees' blood pressure, providing band-aids, and ensuring employees on the production line wore their personal protective equipment.[7]

As a non-exempt, salaried employee, Ms. Bean was required to clock in and clock out.[8] Ms. Bean understood her employment classification to mean that she was paid her guaranteed salary for any hours worked up to 40 in a week plus time-and-a-half pay for any hours she worked over 40 in a given week.[9]  Wayne Farms agreed, and paid Ms. Bean on a biweekly basis.[10]

Ms. Bean's last day of employment with Wayne Farms was June 23, 2020.[11]  On June 30, 2020, she brought this lawsuit against Wayne Farms for failure to pay overtime.[12]  As Ms. Bean concedes, the claims in this lawsuit are subject to a three-year statute of limitations period.[13] Accordingly, the relevant time period at issue in this case starts on June 30, 2017, and runs through Ms. Bean's last day of work on June 23, 2020.  Ms. Bean claims that she was not paid for two to five hours of off-the-clock (and unrecorded) work in each week of this three-year period.[14]  Wayne

---

[6] Ex. A to Def.'s Mot. for Summ. J. (Doc. 16-1) at 31–34.

[7] *Id.*

[8] Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts (Doc. 21) ¶¶ 3, 6; Ex. J to Def.'s Mot. for Summ. J. (Doc. 16-10) ¶ 4.  Ms. Bean alleges in her complaint that she was misclassified if Wayne Farms classified her as an exempt and salaried employee.  Compl. (Doc. 1) ¶ 26.  But she later admits that Wayne Farms classified Ms. Bean as a non-exempt and salaried employee.  Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts (Doc. 21) ¶ 3.  Ms. Bean did not raise the classification issue in her opposition to Defendant's Motion for Summary Judgment or at the Motion for Summary Judgment hearing.

[9] Ex. A to Def.'s Mot. for Summ. J. (Doc. 16-1) at 43; Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts (Doc. 21) ¶ 5.

[10] Ex. A to Def.'s Mot. for Summ. J. (Doc. 16-1) at 43; Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts (Doc. 21) at ¶ 5.

[11] Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts (Doc. 21) ¶ 3.  This is inconsistent with one of Ms. Bean's allegations in her complaint, which states that she's currently employed by Wayne Farms. Compl. (Doc. 1) ¶ 23.  This dispute is immaterial.

[12] Compl. (Doc 1).

[13] *Id.* ¶ 43.  The FLSA imposes a two-year statute of limitations for violations; the time period is extended to three years for willful violations of the FLSA.  29 U.S.C. § 255(a).

[14] Compl. (Doc. 1) ¶ 33.

Farms disputes that Ms. Bean worked off the clock.[15] Wayne Farms maintains that its time records reflect all the hours that Ms. Bean worked (and certainly all the hours that Wayne Farms knew Ms. Bean worked).[16]

**A. Ms. Bean Contends that Wayne Farms's Time Records Are Inaccurate**

Ms. Bean does not dispute that she was properly paid for all recorded hours she worked.[17] And Ms. Bean does not dispute that she was paid overtime for any recorded hours over 40 in a given workweek.[18] But she asserts that Wayne Farms's records are inaccurate because they do not reflect all of the hours that she worked.[19]

Ms. Bean makes three arguments to support her claim: (1) Wayne Farms failed to maintain accurate time punches, (2) she accompanied injured employees to the hospital while she was off the clock, and (3) she performed regular and consistent post-shift work off the clock.[20] Ms. Bean believes she wasn't paid for all of the hours she worked because she "never saw a huge difference in [her] check."[21]

**1. Manual Time Punches by Ms. Bean's Supervisor**

Wayne Farms's employees had a couple of ways to clock in and clock out. The primary way was to swipe a badge through a reader located in the break room.[22] Ms. Bean was trained on how to properly clock in and clock out of Wayne Farms's timekeeping system.[23] If Ms. Bean

---

[15] Br. in Supp. of Def.'s Mot. for Summ. J. (Doc. 17) at 1.

[16] Def.'s Reply in Supp. of Mot. for Summ. J. (Doc. 22) at 5–7.

[17] Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts (Doc. 21) ¶ 5.

[18] *Id.* ¶¶ 5, 18.

[19] *Id.* ¶¶ 5, 18–19.

[20] Pl.'s Resp. to Def.'s Mot. for Summ. J. (Doc. 20) at 4.

[21] Ex. A to Def.'s Mot. for Summ. J. (Doc. 16-1) at 44.

[22] *Id.* at 46.

[23] Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts (Doc. 21) ¶ 6.

couldn't clock in or clock out using her badge for whatever reason, Ms. Bean knew that she could advise her supervisor of any missed punches or time worked.[24] Ms. Bean's supervisor was then expected to adjust Ms. Bean's time accordingly.[25]

Ms. Bean's shift usually included 4 punches (start of shift, out for lunch, in for lunch, and end of shift).[26] Ms. Bean "regularly failed to swipe her badge to clock in or out after lunch and at the end of her shift."[27] Ms. Bean failed to punch in or out for a variety of reasons: for example, sometimes her badge failed to work, sometimes the time-keeping equipment malfunctioned, and "sometimes she just forgot."[28] If Ms. Bean failed to tell her supervisor about a missed punch, her supervisor sometimes verified the correct time to enter with Ms. Bean.[29] But sometimes her supervisor didn't confirm the correct time with Ms. Bean.[30] Ms. Bean contends that, on these occasions, her supervisor "guessed" and incorrectly entered Ms. Bean's time when she failed to clock in or clock out.[31] Ms. Bean never checked to see if her supervisor's manual entries were accurate.[32] She instead assumed that her supervisor entered the correct time.[33]

A significant point of contention in this case is Ms. Bean's lunch hour. Ms. Bean says that her co-workers would sometimes ask her to return to work during lunch before her hour break was

---

[24] *Id.* ¶¶ 6, 16; *see also* Ex. A to Def.'s Mot. for Summ. J. (Doc. 16-1) at 20.

[25] Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts (Doc. 21) ¶¶ 6, 8, 11, 16; *see also* Ex. A to Def.'s Mot. for Summ. J. (Doc. 16-1) at 20, 50–51.

[26] Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts (Doc. 21) ¶ 8.

[27] *Id.* ¶ 4.

[28] *Id.* ¶ 8.

[29] *Id.* ¶ 5; Ex. A to Def.'s Mot. for Summ. J. (Doc. 16-1) at 50.

[30] Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts (Doc. 21) ¶ 5; Ex. A to Def.'s Mot. for Summ. J. (Doc. 16-1) at 50.

[31] Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts (Doc. 21) ¶ 19.

[32] *Id.* ¶ 13.

[33] *Id.*

up, and she would at times forget to clock back in.[34] When this happened, her supervisor would typically ask her how long she took for lunch and manually enter the time that Ms. Bean provided.[35] However, when Ms. Bean didn't respond, Ms. Bean speculates that her supervisor "usually" entered the time as if Ms. Bean took a full hour for lunch, even when her lunch break was cut short.[36] Moreover, Ms. Bean suggests that her supervisor was likely inclined to enter a full hour for Ms. Bean's lunchbreak because her supervisor had repeatedly instructed Ms. Bean to take an hour lunchbreak.[37]

Ms. Bean claims that she told her supervisor to automatically deduct an hour when Ms. Bean failed to clock back in after lunch.[38] But Ms. Bean also admits that it was not company policy to automatically make such a deduction.[39] The record shows that Ms. Bean was fully paid over 400 times for the lunch hour when she didn't clock out for lunch during the three years relevant to this lawsuit.[40]

**2. Hospital Visit on March 14, 2020**

Ms. Bean contends that she occasionally accompanied injured employees to the hospital well past the end of her regularly scheduled shift.[41] Ms. Bean argues that she was not compensated for the hours she spent at the hospital.[42] To support her claim, Ms. Bean only points to one date,

---

[34] *Id.* ¶ 15.

[35] *Id.* ¶¶ 15–16.

[36] *Id.*

[37] Ex. A to Def.'s Mot. for Summ. J. (Doc. 16-1) at 48; Pl.'s Resp. to Def.'s Mot. for Summ. J. (Doc. 20) at 4–5.

[38] Ex. A to Def.'s Mot. for Summ. J. (Doc. 16-1) at 82–83.

[39] *Id.*

[40] Ex. D to Def.'s Mot. for Summ. J. (Doc. 16-4) at 1–41.

[41] Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts (Doc. 21) ¶¶ 5, 11, 18.

[42] *Id.* ¶ 18.

March 14, 2020, when she accompanied an injured employee to the hospital.[43] From March 13 to March 14, 2020, Wayne Farms's time records show that Ms. Bean clocked in and out several times: (1) March 13, 4:00 p.m. - March 14, 12:02 a.m.; (2) March 14, 2:12 a.m. - 10:30 a.m.; and (3) March 14, 6:00 p.m. - 6:30 p.m.[44] Ms. Bean produced five screenshots from her cell phone that appear to have been taken on March 14, 2020: (1) a photo of a leg and foot taken at 3:28 a.m.; (2) a photo of the hours and contact information for medical facilities taken at 5:02 a.m.; (3) a photo of a foot taken at 6:46 a.m.; (4) a photo of Ms. Bean's computer taken in her office at 8:09 p.m.; and (5) a photo of an x-ray taken in her office at 8:09 p.m.[45] The 3:28 a.m., 5:02 a.m., and 6:46 a.m. screenshots are consistent with Ms. Bean's recorded time. However, Ms. Bean offers the two images taken at 8:09 p.m. as evidence that she completed work off the clock.

### 3. Post-Shift Work

Wayne Farms had three shifts.[46] The first and second shifts involved production and the third shift was devoted to sanitation (cleaning the equipment).[47] Ms. Bean worked the second production shift at Wayne Farms.[48] Her usual start time was 4 p.m. and her usual end time was around midnight, or until the production line ran out of birds to process.[49] Because her supervisor worked the first shift and typically left about the time that Ms. Bean's shift started, Ms. Bean

---

[43] Pl.'s Resp. to Def.'s Mot. for Summ. J. (Doc. 20) at 5.

[44] Ex. D to Def.'s Mot. for Summ. J. (Doc. 16-4) at 38.

[45] Ex. L to Def.'s Mot. for Summ. J. (Doc. 16-12) at 1–2, 31, 34, 38.

[46] Ex. A to Def.'s Mot. for Summ. J. (Doc. 16-1) at 38.

[47] *Id.*

[48] Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts (Doc. 21) ¶ 7; Ex. A to Def.'s Mot. for Summ. J. (Doc. 16-1) at 33–34.

[49] Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts (Doc. 21) ¶ 7; Ex. A to Def.'s Mot. for Summ. J. (Doc. 16-1) at 30.

frequently came in early for meetings with her supervisor.[50] Ms. Bean also contends that she regularly worked beyond midnight when the production lines would run as late as 1:00 or 1:30 a.m. and could be as late as 2:00 or 2:30 a.m.[51]

Because no Health and Safety Technician was employed for the third sanitation shift, Ms. Bean was the point-of-contact for any third-shift injuries.[52] While she didn't have to remain on site for the third shift, Ms. Bean asserts that she was "regularly called after her shift had concluded to resolve issues that arose on the shift following hers, which sometimes required her to return to work."[53] Ms. Bean also received post-shift texts and calls about work-related matters from 7 a.m. until the start of her shift later in the day.[54] She claims that she was not compensated for the time she spent answering phones calls and text messages.[55]

Ms. Bean produced a few screenshots from her phone to try to support her claim that she was not compensated for performing post-shift work. These screenshots include: (1) a text message conversation where Ms. Bean tells her mom "I'm off work for the night" at 9:34 p.m. on April 3, 2019;[56] (2) a photo of a CPR roster taken on August 5, 2019, at 1:56 p.m.;[57] (3) a photo of pull tubes labeled "Cooler #2 1:05" and "Cooler # 3 1:07" taken on September 19, 2019, at 2:00

---

[50] Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts (Doc. 21) ¶ 7; Ex. A to Def.'s Mot. for Summ. J. (Doc. 16-1) at 34.

[51] Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts (Doc. 21) ¶ 7; Ex. A to Def.'s Mot. for Summ. J. (Doc. 16-1) at 31.

[52] Ex. A to Def.'s Mot. for Summ. J. (Doc. 16-1) at 38–39, 57, 69; Dec. 16, 2021 Hr'g Tr. at 3.

[53] Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts (Doc. 21) ¶¶ 4, 5, 11, 18; Ex. A to Def.'s Mot. for Summ. J. (Doc. 16-1) at 76, 89.

[54] Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts (Doc. 21) ¶ 17; Ex. A to Def.'s Mot. for Summ. J. (Doc. 16-1) at 7.

[55] Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts (Doc. 21) ¶ 19; Ex. A to Def.'s Mot. for Summ. J. (Doc. 16-1) at 7.

[56] Ex. L to Def.'s Mot. for Summ. J. (Doc. 16-12) at 36; Ex. A to Def.'s Mot. for Summ. J. (Doc. 16-1) at 176.

[57] Ex. L to Def.'s Mot. for Summ. J. (Doc. 16-12) at 32.

a.m.;[58] (4) an email from Ms. Bean containing a photo of a handwritten summary about an ammonia leak addressed to her supervisor and another Wayne Farms employee on September 19, 2019, at 10:41 a.m.;[59] and (5) a photo of a hand taken on April 25, 2020, at 9:32 p.m.[60]

Ms. Bean highlights two of these screenshots from 2019 to show that she performed unrecorded post-shift work. First, Ms. Bean points to the photo of the CPR roster timestamped at 1:56 p.m. on August 5, 2019, to show that she was working when she was clocked out.[61] Wayne Farms's time records show that Ms. Bean clocked in at 3:51 p.m. and out at 10:19 p.m. on August 5, 2019.[62] Second, Ms. Bean points to the email containing the ammonia leak incident report that she sent at 10:41 a.m. on September 19, 2019, to show that she was working when she was clocked out.[63] According to the incident report, Ms. Bean was notified about the ammonia leak at 12:55 a.m. on September 19, 2019.[64] Wayne Farms's time records show that Ms. Bean clocked out at 2:24 a.m. (at the end of her shift) and clocked in at 3:33 p.m. (at the beginning of her next shift) on September 19, 2019.[65]

---

[58] *Id.* at 35.

[59] *Id.* at 30.

[60] *Id.* at 33.

[61] Pl.'s Resp. to Def.'s Mot. for Summ. J. (Doc. 20) at 7 (citing Ex. L to Def.'s Mot. for Summ. J. (Doc. 16-12) at 32).

[62] Ex. D to Def.'s Mot. for Summ. J. (Doc. 16-4) at 30. The record also contains a text message exchange between Ms. Bean and her supervisor on August 5, 2019, about Ms. Bean cleaning her supervisor's car. Ex. M to Def.'s Reply in Supp. of Mot. for Summ. J. (Doc. 22-1) at 1. Ms. Bean had a car-detailing business. Ex. O to Def.'s Reply in Supp. of Mot. for Summ. J. (Doc. 22-3) at ¶¶ 14–16. At 10:37 a.m. on August 5, 2019, Ms. Bean texted her supervisor: "U still want ur car cleaned boss lady," her supervisor responded "Yes," and Ms. Bean said "Ok I'm gonna come trade ya." Ex. M to Def.'s Reply in Supp. of Mot. for Summ. J. (Doc. 22-1) at 1.

[63] Pl.'s Resp. to Def.'s Mot. for Summ. J. (Doc. 20) at 7–8 (citing Ex. L to Def.'s Mot. for Summ. J. (Doc. 16-12) at 30).

[64] Ex. L to Def.'s Mot. for Summ. J. (Doc. 16-12) at 30.

[65] Ex. D to Def.'s Mot. for Summ. J. (Doc. 16-4) at 31.

As to the remaining screenshots, they do not suggest off-the-clock work. On April 3, 2019, Ms. Bean clocked in at 3:51 p.m. and out for the day at 9:01 p.m.[66] This is consistent with (or at the very least not inconsistent with) the 9:34 p.m. text message sent by Ms. Bean that said "I'm off work for the night." On September 18, 2019, Ms. Bean clocked in at 10:49 p.m. She clocked out on September 19, 2019, at 2:24 a.m.[67] This is consistent with Ms. Bean's pull tube photo taken at 2:00 a.m. on September 19, 2019. On April 25, 2020, Ms. Bean clocked in at 4:01 p.m. and clocked out at 11:21 p.m.[68] This is consistent with Ms. Bean's the photo of the hand taken at 9:32 p.m. on April 25, 2020.

Ms. Bean repeated throughout her deposition testimony that she wasn't paid overtime for time she worked off the clock.[69] When pressed for more details about the alleged unrecorded work that she performed, she testified that she would produce phone records to support her assertions that she routinely received off-the-clock phone calls and text messages.[70] Other than the screenshots just discussed, no other records were provided to the Court. And Ms. Bean did not seek to depose anyone—supervisors, co-workers, friends, family—to corroborate any part of her claims.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the moving party shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[71] If the moving party makes such a showing, the non-moving party must then present "specific facts, by affidavit,

---

[66] *Id.* at 24.

[67] *Id.* at 31.

[68] *Id.* at 40.

[69] Ex. A to Def.'s Mot. for Summ. J. (Doc. 16-1) at 7, 119–20.

[70] *Id.* at 96–97, 108, 118–19, 125–26, 170, 239.

[71] *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (citing Fed. R. Civ. P. 56(c)(2)).

deposition, or otherwise, showing the existence of a genuine issue for trial" to avoid summary judgment.[72]

Importantly, "[t]he mere existence of a factual dispute is insufficient alone to bar summary judgment."[73] The dispute of fact must instead be both genuine and material to prevent summary judgment.[74] Whether there is a material dispute of fact "rests on the substantive law," because "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs."[75] A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[76]

### III. DISCUSSION

Ms. Bean alleges that Wayne Farms failed to pay her overtime wages in violation of the FLSA and AMWA. The FLSA, codified as 29 U.S.C. § 207, requires employers to pay employees overtime wages no less than one and one-half (1.5) times their regular rate of pay.[77] The AMWA requires the same under state law.[78]

The FLSA tasks employers with tracking and recording their employees' work time.[79] Given this statutory requirement, the Supreme Court and Eighth Circuit have made clear that an employee suing for unpaid overtime cannot be denied recovery simply because the precise extent

---

[72] *Grey v. City of Oak Grove*, 396 F.3d 1031, 1034 (8th Cir. 2005).

[73] *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).

[74] *Torgerson*, 643 F.3d at 1042.

[75] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[76] *Id.*

[77] 29 U.S.C. § 207(a)(1).

[78] Ark. Code. Ann. § 11-4-211.

[79] 29 U.S.C. § 211(c).

of her work cannot be proven due to her employer's failure to maintain adequate time records.[80] Thus, when an employer has failed to keep accurate time records, courts apply a relaxed evidentiary standard under which an employee can recover for uncompensated worktime "if [s]he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."[81] Ms. Bean argues that the relaxed evidentiary standard should apply here. But the Court disagrees for two independent reasons.

First, Wayne Farms used a timekeeping system to keep track of their employees' time. Wayne Farms trained hourly employees, including Ms. Bean, on how to use the timekeeping system. Ms. Bean was compensated for the recorded time that she worked, which her pay stubs and time punches show.[82] Ms. Bean contends that she encountered problems using the timekeeping system, including her badge not working properly. However, it is undisputed that Wayne Farms had a protocol in place for employees to report unrecorded time. Ms. Bean could ask her supervisor to adjust Ms. Bean's time when she missed a punch, encountered a mechanical problem, or worked offsite. Ms. Bean was aware of this protocol and frequently made use of it when she remembered to do so. Thus, the relaxed *Anderson* standard does not apply here because Wayne Farms systematically kept track of Ms. Bean's time.

Second, as this Court has previously explained, the relaxed evidentiary standard applies when determining proof of damages rather than proof of liability:

> [T]he Eighth Circuit precedent is clear that the "relaxed standard" in *Anderson* is not used for proving liability. Rather, *Anderson* relaxed the standard of proof

---

[80] *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946); *Dole v. Tony & Susan Alamo Found.*, 915 F.2d 349, 351 (8th Cir. 1990).

[81] *Anderson*, 328 U.S. at 687. If the employee can meet her burden, the burden shifts to the employer to put forth evidence of the precise amount of work by the employee that negates "the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687–88.

[82] *See* Ex. C to Def.'s Mot. for Summ. J. (Doc. 16-3); Ex. D to Def.'s Mot. for Summ. J. (Doc. 16-4); Ex. E to Def.'s Mot. for Summ. J. (Doc. 16-5).

needed to prove "the amount of damages." Indeed, the Court in *Anderson* went out of its way to make clear that a relaxed standard of proof only applied "assuming that the employee has [already] proved that [s]he has performed work and has not been paid in accordance with the statute." The "relaxed standard" applies in determining "the *extent* of the damages[,]" not the "*fact* of damage[s]." To determine liability, the standard of proof is always the same: the employee must prove by a preponderance of the evidence that [s]he performed uncompensated work.[83]

Accordingly, Ms. Bean must first prove liability—that is, she must prove by a preponderance of the evidence that she performed any uncompensated overtime work—before this Court need consider whether the relaxed standard applies to proof of damages.

In any event, the Court ultimately need not reach the issue of whether the regular or relaxed standard applies here. Even assuming the relaxed standard applied, "contradictory and bare assertions of . . . hours worked" do not create a triable issue of fact.[84] A plaintiff-employee can satisfy her evidentiary burden in different ways, such as records and testimony.[85] But relying "mainly just [on] recollections of [her] daily activities" does not suffice—at least where those recollections are general and vague.[86] A plaintiff-employee must provide a meaningful and consistent explanation for her estimate of hours worked as well as "details which would allow a jury to determine" that the plaintiff-employee worked the claimed overtime.[87] She must provide some specific information, such as "specific dates worked, specific hours worked, or money owed."[88]

---

[83] *Thompson v. DiMichele Enters., Inc.*, No. 4:18-cv-00903-LPR, 2020 WL 1285040, at *6 (E.D. Ark. Jan. 3 2020) (internal citations omitted) (emphasis in the original).

[84] *Holaway v. Stratasys, Inc.*, 771 F.3d 1057, 1059 (8th Cir. 2014).

[85] *See Mumbower v. Callicott*, 526 F.2d 1183, 1186 (8th Cir. 1975).

[86] *Holaway*, 771 F.3d at 1058.

[87]*Id.* at 1060.

[88] *Carmody v. Kan. City Bd. of Police Comm'rs*, 713 F.3d 401, 407 (8th Cir. 2013).

"Without record evidence of a single hour worked over forty hours that did not receive overtime wages . . . unsupported estimations of the unpaid hours due are not enough."[89] And, of course, to succeed on an overtime claim, the employee must also show that her employer knew, or should have known, that she was working the claimed overtime. Here, Ms. Bean only offered bare, conclusory, and contradictory factual assertions about the time she worked. This is not enough to establish a just and reasonable inference that Ms. Bean worked uncompensated overtime. No reasonable juror could rationally find otherwise.

**A. Wayne Farms's Time Punches are Accurate**

The Court concludes that there is no genuine dispute of material fact as to the accuracy of Wayne Farms's time records or that Ms. Bean was properly paid for all recorded time. The record contains not a single instance of Ms. Bean's supervisor clocking her in or out at a time other than what Ms. Bean told her.

Ms. Bean complains about failing to clock in after being called in to work before her lunch break ended. However, Ms. Bean could not recall a specific day when this happened. In fact, Ms. Bean did not take a lunch break on over 400 days and was paid correctly on each of those days. Ms. Bean did not dispute this. Nothing in the record suggests that her supervisor automatically deducted an hour lunch break even when Ms. Bean didn't take such a break.

Ms. Bean also says that sometimes she failed to clock in or out because her badge didn't work or the system otherwise malfunctioned. Nothing in the record shows that other employees had this problem. Ms. Bean did not depose any other employees to get such testimony. She did not even submit declarations from other employees with such factual assertions. However, accepting as true that Ms. Bean encountered technical difficulties with the time-keeping system,

---

[89] *Id.* at 407.

Ms. Bean was aware of the protocol in place to correct her timecard.  Ms. Bean does not dispute that she was supposed to let her supervisor know when she needed to modify her timecard entries.  And while Ms. Bean speculates that some days her supervisor might have mistakenly guessed at (and lowballed) Ms. Bean's work time, Ms. Bean points to no specific days where this occurred.

In any event, the inaccuracies (if any) in Ms. Bean's time punches are attributable to her failure to inform her supervisor when Ms. Bean needed to adjust her time punches.[90]  The FLSA does not task employers with conducting internal investigations to ferret out off-the-clock work.[91]  Wayne Farms had a reliable time-keeping system and an established procedure to report overtime that Ms. Bean regularly used.  Wayne Farms did not need to do more, unless it specifically knew of unrecorded off-the-clock work.

Ms. Bean's vague and general testimony about off-the-clock work is not enough to create a genuine issue of material fact as to the accuracy and completeness of Wayne Farms's time records.  In her deposition, Ms. Bean repeated at least half a dozen times that she would produce phone records to support her allegations that she performed unrecorded overtime.  Ms. Bean only produced a few screenshots from her cell phone, which are insufficient to get her over summary judgment for reasons explained by the Court below.  Without something more, Wayne Farms is entitled to summary judgment because the records show that Ms. Bean was paid properly for all recorded hours.

---

[90] When asked whether she ever reviewed her supervisor's manual entries, Ms. Bean testified that she assumed her supervisor took care of it and never checked the accuracy of her time punches.  Ex. A to Def.'s Mot. for Summ. J. (Doc. 16-1) at 62.  This lack of attention strikes the Court as odd, considering Ms. Bean repeatedly states that she was not being paid in full for the hours that she worked.  Given her self-suggested apprehension, the Court would expect that Ms. Bean would make the effort to confirm the accuracy of her timecards.

[91] *Hertz v. Woodbury Cnty.*, 566 F.3d 775, 782 (8th Cir. 2009).

**B. No Unpaid Overtime Worked on March 14, 2020**

Ms. Bean originally contended that she wasn't compensated for accompanying an employee to the hospital on March 14, 2020. However, the time punches show that Ms. Bean was compensated for the time she spent at the hospital. Ms. Bean's counsel did not dispute this at the hearing.[92] Instead, Ms. Bean points to two photos taken at 8:09 p.m. on March 14, 2020, in her office to support her argument that she worked off the clock. Ms. Bean testified that she returned to Wayne Farms to fill out paperwork later in the day after she left the hospital and went home.[93] And she argues that she was not compensated for this time because the time records show that she was not clocked in when the 8:09 p.m. photos were taken. Time records do show, however, that she was clocked in from 6:00 to 6:30 p.m. on March 14, 2020.

Wayne Farms says that Ms. Bean told her supervisor that Ms. Bean worked for 30 minutes off the clock on the evening of March 14, 2020.[94] Wayne Farms argues that Ms. Bean was properly compensated for thirty minutes of work even if her supervisor incorrectly logged her time from 6:00 to 6:30 p.m. rather than sometime around 8:09 p.m. (when she was actually working).[95] Indeed, Ms. Bean further testified that she can't recall how long she worked on the evening of March 14, 2020.[96] She certainly does not say she worked more than 30 minutes.

Based on the record, the Court concludes that there's no genuine dispute as to whether Ms. Bean worked more than the time she was compensated for on March 14, 2020. She didn't. No

---

[92] Dec. 16, 2021 Hr'g Tr. at 43 (Ms. Bean's counsel: "On the March 14th issue, what we have is, you know, plaintiff has provided this documentation that she was working at three times, which correspond to the punch records that defendant has provided. And then she has a punch—she has provided documentation that she was working at 8:09 p.m., on March 14th, which is not reflected in defendant's punch records.").

[93] Ex. A to Def.'s Mot. for Summ. J. (Doc. 16-1) at 160–61, 179.

[94] Def.'s Reply in Supp. of Mot. for Summ. J. (Doc. 22) at 9.

[95] *Id.* at 10 n.8.

[96] Ex. A to Def.'s Mot. for Summ. J. (Doc. 16-1) at 165.

rational juror could conclude otherwise. Moreover, even if it appeared that Ms. Bean did work more than 30 minutes that evening, there's no evidence that Wayne Farms had constructive or actual knowledge of such work. Ms. Bean was aware of and routinely made use of the protocol in place to report her off-the-clock work to her supervisor. The record has no evidence that Ms. Bean worked more than 30 minutes on the evening of March 14, 2020.

**C. Post-Shift Work Performed by Ms. Bean is *De Minimis***

The Court concludes that there is no genuine dispute of material fact as to the four days of the alleged post-shift and unrecorded hours that Ms. Bean tries to support with screenshots from her cell phone. Wayne Farms's time records are consistent with three of the five screenshots that Ms. Bean produced: the text message dated April 3, 2019, one of the photos dated September 19, 2019 (2:00 a.m.), and the photo dated April 25, 2020. As for the remaining two photos—the August 5, 2019 photo, and the other September 19, 2019 (10:41 a.m.) photo—at most show *de minimis* work. No rational juror could conclude otherwise.

The April 3, 2019 text message chain is consistent with Wayne Farms's time records. On April 3, 2019, Ms. Bean texted her mom that she was off work for the night at 9:34 p.m. The time records show that Ms. Bean clocked out at 9:01 p.m. Ms. Bean's counsel made no mention at the hearing of this April 3, 2019 text message exchange. And nothing in Ms. Bean's testimony or briefing discusses this text message or the hours that she worked on April 3, 2019. The fact that Ms. Bean texted her mom at 9:34 p.m. to say that she was "off work for the night" does not show that Ms. Bean had left work only at that very moment. There's nothing to suggest Ms. Bean continued working past the recorded 9:01 p.m. clock-out time.

As to one of the September 19, 2019 (2:00 a.m.) photos and the April 25, 2020 photo, Wayne Farms's time records show that Ms. Bean was clocked in and compensated when these

16

photos were taken.  Ms. Bean did not testify to the contrary and did not argue otherwise in her briefing or at oral argument.  Rather than supporting Ms. Bean's argument that she wasn't compensated for post-shift work, these photos do just the opposite.  They bolster the Court's confidence that Wayne Farms's time records are in fact accurate and that Ms. Bean was properly compensated.

As to the August 5, 2019 photo, and the other September 19, 2019 (10:41 a.m.) photo, Wayne Farms's time records show that Ms. Bean was not clocked in when these photos were taken.  The Court concludes that both instances are *de minimis* and therefore, not compensable.[97]  No rational juror could conclude otherwise.

Applying the *de minimis* doctrine in the FLSA context for the first time, the Supreme Court explained in *Anderson*:

> When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded.  Split-second absurdities are not justified by the actualities of working conditions or by the policy of the Fair Labor Standards Act.  It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved.[98]

The Eighth Circuit has held the following factors are relevant when deciding "whether the work performed by the employee is *de minimis*: (1) the amount of time spent on the extra work, (2) the practical administrative difficulties of recording additional time, (3) the regularity with which the additional work is performed, and (4) the aggregate amount of compensable time."[99]  "[M]ost

---

[97] *Lyons v. Conagra Foods Packaged Foods LLC*, 899 F.3d 567, 584 (8th Cir. 2018) ("Employers are not required to pay employees for 'insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purposes[.]'") (quoting 29 C.F.R. § 785.47).

[98] 328 U.S. at 692.

[99] *Lyons*, 899 F.3d at 584 (internal quotation marks and citations omitted).

17

courts have found daily periods of approximately 10 minutes *de minimis* even though otherwise compensable."[100]

With respect to the photo of the CPR roster taken on August 5, 2019, Ms. Bean argues in her briefing that this photo shows that she was at work preparing for a CPR class.[101] However, nothing in the record suggests that Ms. Bean was preparing for a CPR class at work when the photo was taken. In fact, contrary to her argument, Ms. Bean testified that she sent this photo from her home in response to a co-worker who asked for it.[102] Ms. Bean further testified that she couldn't recall how long it took to take and send the photo.[103] Common sense dictates that it took Ms. Bean at most a few minutes to snap a picture of the roster and send it to her co-worker.[104] Given the short amount of time (only a few minutes) that Ms. Bean spent sending the CPR roster photo and the fact that this appears to be a one-time occurrence, the Court concludes that such time is *de minimis*. No rational juror could conclude otherwise.

Moreover, even if sending the CPR roster wasn't *de minimis* and Ms. Bean's testimony didn't contradict her argument, she would still be out of luck. Here's why. The Court calculated that Ms. Bean worked 32.97 hours and took 8 hours of vacation the week of August 5, 2019.[105] Even if the Court spotted Ms. Bean the 2 to 5 hours that she alleges she worked off the clock each

---

[100] *Id.*

[101] Pl.'s Resp. to Def.'s Mot. for Summ. J. (Doc. 20) at 7.

[102] Ex. A to Def.'s Mot. for Summ. J. (Doc. 16-1) at 170–71. Ms. Bean testified that she would provide a phone record showing that one of her co-workers asked Ms. Bean to send a picture of the roster. *Id.* at 170. No such records were provided to the Court.

[103] Ex. A to Def.'s Mot. for Summ. J. (Doc. 16-1) at 171.

[104] The record also contains a text message conversation between Ms. Bean and her supervisor that shows Ms. Bean was not at work preparing for a CPR training, but instead she was detailing her supervisor's car on August 5, 2019. Ex. M to Def.'s Reply in Supp. of Mot. for Summ. J. (Doc. 22-1) 1–3; *see supra* note 62.

[105] Ex. E to Def.'s Mot. for Summ. J. (Doc. 16-5) at 33.

week, she still wouldn't receive overtime for the week of August 5, 2019. So, for the purposes of her overtime claims under the FLSA, the August 5, 2019 instance is irrelevant.

Regarding the September 19, 2019 (10:41 a.m.), photo of the ammonia leak incident report, Ms. Bean did not testify about the circumstances that prompted her to send this email. She argues in her briefing that this photo shows that she was at work preparing an incident report while she was off the clock.[106] Nothing in the record—no testimony and no declaration—supports this argument. The record does show that the ammonia leak occurred while Ms. Bean was on the clock around 12:55 a.m. Ms. Bean clocked at out 2:24 a.m. The only thing we know from the record is that Ms. Bean sent her supervisor and another Wayne Farms employee the incident report at 10:41 a.m. This is not evidence that any work (other than sending the actual email) was done off the clock.

Nothing in the record suggests that Ms. Bean prepared this report off the clock. This screenshot only shows an email with no subject line or body other than a photo of the handwritten incident report. Snapping a photo of the incident report and emailing it takes no more than a few minutes. Given the short amount of time that Ms. Bean spent composing the email, the Court concludes that such time is *de minimis*. No rational juror could conclude otherwise.

---

[106] Pl.'s Resp. to Def.'s Mot. for Summ. J. (Doc. 20) at 8–9.

## CONCLUSION

For the reasons described above, Defendant's Motion for Summary Judgment is GRANTED on all claims.

IT IS SO ORDERED this 21st day of March 2022.

                                                        LEE P. RUDOFSKY
                                                       UNITED STATES DISTRICT JUDGE